Filed 3/18/14  P. v. Sanchez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063574 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF28122) |
| JUAN MARTINEZ SANCHEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Patrick M. Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Juan Martinez Sanchez of one count of committing a lewd and lascivious act upon a child under the age of 14 (Pen. Code, § 288, subd. (a)). The court sentenced Sanchez to the middle prison term of six years.

Sanchez appeals, contending (1) his conviction must be reversed because the court prejudicially erred and violated his constitutional rights to due process and a fair trial by admitting into evidence the victim's statements to her mother and Detective Damian Valdez of the El Centro Police Department, and (2) in the alternative, his sentence must be vacated and the matter remanded for resentencing because the court abused its discretion in denying probation as the court relied on factors that had no support in the record. We affirm the judgment.

## FACTUAL BACKGROUND

A. *The People's Case*

In December 2011[1] Sanchez lived with Susana D., their daughter D., and Susana D.'s three other children, including her then-eight-year-old daughter S.B., who was the victim in this case. Although Susana D. first knew Sanchez by the name of Javier Ortiz, she later learned his name was actually Juan Sanchez. Susana D. testified that Sanchez used another name because he was not legally documented to work in the United States.

At trial, S.B. indicated that a couple of days before the events of the early morning hours of December 7—Sanchez showed her pornography, which she described at trial as "nasty stuff," on the computer. S.B. testified that Sanchez told her to look at the

---

[1]     All further dates are to calendar year 2011.

pornography with him, and, although she did not want to look at it, she saw "people that were naked." Sanchez told her not to tell her mother or he would tell her that S.B. had hit her sister and was misbehaving.

On December 6, S.B. went to bed sometime between 7:00 and 8:00 p.m. S.B. testified that Sanchez entered her room at around midnight while she was asleep. Later, in the early morning hours of December 7, she awoke and found Sanchez with his shorts pulled down and rubbing "[t]he thing where he does pee" on her mouth and head. S.B. testified she "felt wet" and his penis smelled like urine. Sanchez told her, "Shh, go to sleep." Sanchez then left the room. S.B. wiped her face on the pillow and went back to sleep.

When asked at trial what was the next thing she remembered, S.B. testified she "felt something wet in [her] hand" and saw Sanchez's "thing" (penis) in her right hand. S.B. pulled her hand away, and Sanchez pulled up his shorts and left the room without saying anything. S.B. wiped her hand on the pillow, threw the pillow to the other side of the room, covered herself up, and used another pillow to fall back to sleep.

S.B. testified she again woke up when her mother (Susana D.) came into the room. S.B. testified she stood up and was shaking because she was "all scared." S.B. then told her mother what Sanchez had done to her. She told Susana D. that "Javier" (Sanchez) came into her room and put his thing on her lips and head. S.B. testified her mother "cleaned" S.B.'s mouth and then woke up Sanchez, who told S.B. to "tell the truth" and called her "crazy." Susana D. told Sanchez to leave, and he got his "stuff" and left.

Susana D. testified she woke up at 3:45 a.m. that morning and, when she went into S.B.'s room about 20 minutes later after checking on her other daughter, S.B. was "very scared." When Susana D. put her hand on S.B.'s forehead to check whether she had a fever, S.B. "jumped back" and put both hands up by her face. Susana D. testified that S.B. looked at her in an "ugly" way "like she was in terror," and told Susana D. she needed to tell her something. S.B. started crying and told her that Sanchez had put his "wee-wee" on her mouth and hand. He touched her by rubbing the index finger of her right hand across her mouth. Susana D. asked S.B. what Sanchez did when he saw she had woken up, and S.B. replied that Sanchez told her, "Shh, go to sleep." S.B. also told Susana D. that Sanchez came back into her room, and he had her hand on his "thing where he does pee-pee."

Susana D. testified she later woke up Sanchez and told him to get up. She indicated that when she confronted Sanchez about S.B.'s accusations, he denied the accusations and told her (Susana D.) she was crazy. Susana D. told Sanchez to leave, and after he changed, he also told S.B. she was crazy and left the house. Susana D. called the police later that morning.

At 7:00 a.m. that same morning (December 7), Detective Valdez of the El Centro Police Department interviewed S.B. at her home. S.B., who was calm but seemed upset, gave Detective Valdez the same information she had given to Susana D..

4

Sanchez was arrested later that afternoon. After he was informed of and waived his *Miranda*[2] rights, Sanchez denied S.B.'s accusations and said he only entered her room once and did not place his penis on her mouth or hand. He also denied showing her pornography. Although he described small thumbnail pornographic images that were on the computer, he told Detective Valdez that he heard S.B. call him to watch the screen, but he told her to turn off the computer because he did not know how to work it.

B. *The Defense*

Sanchez testified on his own behalf, assisted by a court-certified Spanish-speaking interpreter. Sanchez admitted he was in the country illegally and had used the name Javier Ortiz and a Social Security number for about 22 years in order to work. He initially stated he had no prior arrests, even when he used the name Javier Ortiz. Later, on cross-examination, he admitted he had been arrested and served jail time in 1992 for being in the country illegally.

Sanchez testified he did not know how to turn on or operate the laptop computer, and he did not have the password. He denied showing pornography to S.B. on the laptop. He indicated that, on December 6, he told S.B. to turn on the computer so he could "look at some jokes." As S.B. was using the computer, she called him into the bedroom to show him what Sanchez described at trial as pornography. Sanchez testified he told her to erase the pornography and turn off the computer. He denied that he viewed pornography when he used the computer.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

Sanchez also testified that he went into S.B.'s bedroom that night at around 11:00 p.m. at Susana D.'s request to give S.B. medicine for a fever, and then he went back to bed. He denied molesting S.B.

C. *The People's Rebuttal*

Detective Valdez testified that when he interviewed Sanchez in Spanish on December 7, Sanchez did not mention that Susana D. asked him to give S.B. medicine after S.B. went to bed on December 6. Sanchez told him he gave medicine to S.B. before she went to bed.

## DISCUSSION

### I. *CLAIMS OF EVIDENTIARY ERROR*

Sanchez first claims the court prejudicially erred and violated his constitutional rights to due process and a fair trial by admitting into evidence the victim's statements to her mother and Detective Valdez. Specifically, he contends the court erred by admitting evidence of S.B.'s statements under (1) the fresh complaint doctrine, (2) the excited utterance hearsay exception set forth in Evidence Code section 1240 (all further unattributed statutory references are to the Evidence Code), and (3) section 1360, which codifies an exception to the hearsay rule for statements by a person under 12 years of age describing an act of child abuse in a criminal prosecution. These contentions are unavailing.

A. *Background*

The prosecution filed a motion in limine seeking to introduce evidence of S.B.'s statements to third parties—her mother (Susana D.) and Detective Valdez—under section 1360.

During the hearing on the People's in limine motion, the court asked for an offer of proof regarding the evidence of S.B.'s statements to her mother, which the court referred to as a "fresh complaint." The prosecutor stated Susana D. would testify she went into S.B.'s bedroom on December 7 at around 4:00 a.m. When she touched S.B.'s forehead, S.B. woke up, jumped back, appeared to be very scared, and said, "Mom, I need to tell you something." S.B. told her that Sanchez had rubbed his penis on her mouth and later, when he woke her up again, she felt something wet and found he had his penis in her hand. The prosecutor also said Susana D. would testify that S.B. told her that on an earlier occasion, Sanchez had called her over to the computer as he was watching people with their clothes off. Defense counsel objected that the evidence was inadmissible hearsay, it violated Sanchez's right to due process. and it constituted impermissible bolstering of S.B. as a witness.

With respect to the evidence of S.B.'s statements to Susana D., the court granted the prosecution's in limine motion, finding that (1) Susana D.'s testimony was admissible under the fresh complaint doctrine, the excited utterance hearsay exception, and section 1360; and (2) her testimony was also admissible as a prior identification.

The prosecutor also argued S.B.'s statements to Detective Valdez later that same morning on December 7 were admissible under section 1360. The prosecutor informed

7

the court Detective Valdez would testify that S.B. told him she woke up to find Sanchez rubbing his thing on her mouth, her mouth felt wet and she wiped it off with one of her pillows. Sanchez told her to be quiet, go back to sleep, and not say anything. He then left the room. Detective Valdez would also testify S.B. told him she woke up later that night to find Sanchez rubbing his penis on her right hand, her hand felt wet, and she wiped it on her pillow. Defense counsel again objected on hearsay grounds.

The court reserved a ruling on the admissibility of S.B.'s statements to Detective Valdez until it could hear S.B.'s trial testimony.

After both S.B. and her mother testified, the court conducted a hearing outside the presence of the jury at which the prosecutor renewed her request to introduce evidence of S.B.'s statements to Detective Valdez. The court ruled S.B.'s statements to Detective Valdez were admissible as prior consistent or inconsistent statements, and admissible under section 1360. The court also found Detective Valdez's testimony about those statements was relevant to the issue of S.B.'s credibility as a witness.

Both Susana D. and Detective Valdez gave testimony that was consistent with the prosecutor's offers of proof.

B. *Standard of Review*

"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence." (*People v. Waidla* (2000) 22 Cal.4th 690, 723.) We review a trial court's ruling admitting evidence pursuant to an exception to the hearsay rule for an abuse of discretion. (*People v. Alexander* (2010) 49 Cal.4th 846, 908.)

8

We will not disturb the trial court's exercise of discretion except upon a showing that it "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

C.  *Analysis*

1.  *Fresh complaint doctrine* (*S.B.'s statements to Susana D.*)

Sanchez first contends S.B.'s statements to Susana D. were improperly admitted under the fresh complaint doctrine because (1) S.B. made the statements hours after the alleged midnight molestation incident occurred, (2) she made most of the statements in response to questioning, (3) the statements contained inadmissible details of the incident, and (4) the alleged computer pornography incident S.B. spoke about "took place two days earlier."[3]  This multifaceted contention is unavailing.

Under the fresh complaint doctrine, a trial court may admit for a nonhearsay purpose evidence of an extrajudicial complaint made by a victim of a sexual offense. (*People v. Brown* (1994) 8 Cal.4th 746, 749-750 (*Brown*).)  *Brown* explained that "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the

---

[3]    Sanchez also claims the evidence of S.B.'s statements to Detective Valdez was improperly admitted under the fresh complaint doctrine.  However, as the Attorney General correctly points out, the court found S.B.'s statements to Detective Valdez were admissible under section 1360 and as prior consistent to inconsistent statements.  The court did not find her statements to Detective Valdez were admissible under the fresh complaint doctrine.   Accordingly, we need not, and do not, further discuss this claim.

assault to others─whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*Ibid*.)

Evidence of a fresh complaint may be relevant because "the circumstances under which the complaint was made may aid the jury in determining whether the alleged offense occurred. Furthermore, admission of evidence that such a prompt complaint was made also will eliminate the risk that the jury, if not apprised of that fact, erroneously will infer that no such prompt complaint was made." (*Brown*, *supra*, 8 Cal.4th at p. 761.) However, the fresh complaint evidence should be "carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose . . . ." (*Id*. at p. 762.)

*Brown* further explained that, under this standard, "the admissibility of such evidence does not turn invariably upon whether the victim's complaint was made immediately following the alleged assault or was preceded by some delay, nor upon whether the complaint was volunteered spontaneously by the victim or instead was prompted by some inquiry or questioning from another person. Rather, these factors simply are to be considered among the circumstances of the victim's report or disclosure that are relevant in assisting the trier of fact in assessing the significance of the victim's statements in conjunction with all of the other evidence presented." (*Brown*, *supra*, 8 Cal.4th at p. 763.)

10

The *Brown* case is instructive. There, the victim—a 12-year-old girl—was molested over a period of several years from 1985 to 1990. (*Brown*, *supra*, 8 Cal.4th at pp. 749, 750-751.) The victim told a concerned adult about the molestations three months after the last incident. (*Id.* at pp. 751-752.) The California Supreme Court held that the trial court did not err in admitting under the fresh complaint doctrine the evidence of the victim's disclosure of the molestations, concluding that the evidence of the victim's complaint "was relevant to the jury's determination whether the alleged molestation did or did not occur." (*Id.* at pp. 763-764.) Noting that the victim testified to a series of sexual offenses that occurred over a period of several years "during which she remained silent, failing to disclose the incidents to anyone," the *Brown* court explained that "[t]he circumstances under which the alleged molestation finally came to light was reasonably probative of the likelihood that the alleged molestation did or did not occur. The evidence of [the victim's] complaint . . . in response to prompting by a concerned adult who observed [her] distress, and with whom she felt safe and emotionally secure[,] tended to shed light upon the reasons she ultimately did come to disclose the molestation, as well as the reasons for her substantial delay in doing so, and tended to forestall any erroneous inferences that might have arisen in the absence of that evidence." (*Ibid.*)

Here, the court acted within the scope of its legal discretion in deciding S.B.'s statements to her mother qualified as fresh complaints and, thus, evidence of those statements was admissible under the fresh complaint doctrine. It is true, as Sanchez points out, that S.B. made the statements to Susana D. "hours after the [molestation] incident occurred" and about two days after Sanchez allegedly showed her pornography

11

on the laptop computer. However, as already discussed, *Brown* upheld the admission of a victim's complaint made years after the alleged child molestation occurred. (*Brown*, *supra*, 8 Cal.4th at pp. 749, 750-751.)

Sanchez also complains that "most" of S.B.'s statements to Susana D. were impermissibly made "in response to [Susana D.]'s questioning." However, the trial record shows that when S.B. woke up scared and jumped back after Susana D. entered her room and touched her forehead to check whether she had a fever, S.B. began telling her about the incidents without any questioning by Susana D.. It was only after S.B.'s initial disclosure that Susana D. asked follow-up questions. In any event, this type of inquiry is acceptable under the fresh complaint doctrine. (See *Brown*, *supra*, 8 Cal.4th at p. 763 ["admissibility . . . does not turn invariably upon . . . whether the complaint was volunteered spontaneously by the victim or instead was prompted by some inquiry or questioning"].)

Sanchez also objects that S.B.'s statements to Susana D. and Detective Valdez "contained details of the incident." However, the details in Susana D.'s testimony—for example, that S.B. told her Sanchez placed his "wee-wee" on S.B.'s mouth and hand—were similar in nature to details that have been held acceptable in other cases. (See, e.g., *People v. Butler* (1967) 249 Cal.App.2d 799, 804 [victim stated that "the man was sucking his thing"]; *People v. Cordray* (1963) 221 Cal.App.2d 589, 594 [victim stated "he had pulled her pants down and he had kissed her between the legs"].) Therefore, the trial court properly admitted the evidence under the fresh complaint doctrine.

12

For the foregoing reasons, we conclude the court properly admitted the evidence of S.B.'s statements to her mother under the fresh complaint doctrine.

2. *Excited utterance hearsay exception* (*S.B.'s statements to Susana D.*)

Sanchez also contends the evidence of S.B.'s statements to Susana D. was erroneously admitted under the excited utterance hearsay exception because (1) S.B. made the statements hours after the alleged midnight molestation incident occurred, (2) she made most of the statements in response to questioning, and (3) the alleged computer pornography incident occurred two days earlier and was not the type of startling incident that would produce the nervous excitement generally required by section 1240, subdivision (b).

We have already concluded the court properly admitted under the fresh complaint doctrine Susana D.'s testimony about S.B.'s statements to her in the early morning hours of December 7. Accordingly, we need not, and do not, reach Sanchez's claim that the evidence of S.B.'s statements to her mother was also admissible under the excited utterance hearsay exception.

3. *Section 1360* (*S.B.'s statements to Detective Valdez*)

Sanchez also contends the court's admission of S.B.'s statements to Detective Valdez later in the morning on December 7 "cannot be justified by the provisions of Evidence Code section 1360 because the court made no express finding that the time, content and circumstances of the statements provided sufficient indicia of reliability." This contention is unavailing.

13

Section 1360[4] "allows the court to admit a child's hearsay statement describing an act of child abuse upon that child provided three conditions are met: (1) the court finds that the time, content and circumstances of the statement provides sufficient indicia of reliability; (2) the child either testifies at the hearing or there is corroborating evidence of the hearsay statements; and (3) the proponent of the statement gives notice to the adverse party that it intends to use the statement at trial." (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329 (*Brodit*), citing *In re Cindy L.* (1997) 17 Cal.4th 15, 29.)

The nonexclusive list of factors that are relevant to a determination of whether the first requirement of circumstantial indicia of reliability is met includes (1) spontaneity and consistent repetition of the child declarant's statement, (2) the mental state of the child, (3) the child's use of terminology unexpected of a child of similar age, (4) the lack of a motive to fabricate, and (5) the child's ability to understand the duty to tell the truth

---

[4]     Section 1360 provides: "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3) The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child. [¶] (b) A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party the intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement. [¶] (c) For purposes of this section, 'child abuse' means an act proscribed by Section 273a, 273d, or 288.5 of the Penal Code, or any of the acts described in Section 11165.1 of the Penal Code, and 'child neglect' means any of the acts described in Section 11165.2 of the Penal Code."

14

and to distinguish between truth and falsity. (*In re Cindy L.*, *supra*, 17 Cal.4th at pp. 29-30.)

"We review a trial court's admission of evidence under section 1360 for abuse of discretion." (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367; see also *Brodit*, *supra*, 61 Cal.App.4th at p. 1330.) Our review includes an independent review of the court's determination that the statements bore sufficient indicia of reliability. (*People v. Roberto V.*, at p. 1374.)

Here, Sanchez does not contend the second or third requirements for admission of S.B.'s statements to Detective Valdez under section 1360 (discussed, *ante*) are not met. Nor does he contend the first requirement that "the time, content and circumstances of the statement provide sufficient indicia of reliability" (§ 1360, subd. (a)(2)) is not met. Rather, he narrowly contends the court's admission of S.B.'s statements to Detective Valdez "cannot be justified" by the provisions of section 1360 because "the court made no express finding that the time, content and circumstances of the statements provided sufficient indicia of reliability."

In response, the Attorney General argues that "nothing requires the court to make an express finding" that the first section 1360 admissibility requirement is met. We agree.

In *People v. Stowell* (2003) 31 Cal.4th 1107 (*Stowell*), the defendant was convicted of committing specified sexual offenses against the four-year-old victim. (*Id.* at p. 1111.) Under the provisions of Penal Code section 1202.1, the trial court was required to order the defendant to submit to a blood test for evidence of antibodies to the

15

probable causative agent of acquired immune deficiency syndrome (AIDS) "'if the court *finds* that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting [the human immunodeficiency virus (HIV)] has been transferred from the defendant to the victim.'" (*Stowell*, at p. 1112, quoting Pen. Code, § 1202.1, subd. (e)(6)(A), italics added.)  At sentencing, the trial court imposed a prison term and ordered the defendant to submit to a blood test for HIV without making an express finding of probable cause.  (*Stowell*, at pp. 1111, 1112.)

On appeal, the *Stowell* defendant sought to have the blood testing order invalidated, claiming the trial court had failed to state on the record its finding of probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV had been transferred from him to the victim.  (*Stowell*, *supra*, 31 Cal.4th at p. 1112.)

In rejecting that claim, the California Supreme Court explained that the statute "neither require[d] an *express* finding . . . nor contain[ed] any sanction for noncompliance."  (*Stowell*, *supra*, 31 Cal.4th at p. 1114, italics added.)  The *Stowell* court stated that, "[i]n this circumstance, we apply the general rule 'that a trial court is presumed to have been aware of and followed the applicable law.'"  (*Ibid*.)  The Supreme Court also explained that, "where a statement of reasons is not required and the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order."  (*Ibid*.)

Here, section 1360 provides in pertinent part that, "[i]n a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12

16

describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the child by another, is not made inadmissible by the hearsay rule if . . . [t]he court *finds*, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability."  (§ 1360, subd. (a)(2), italics added.)

However, like the statute at issue in *Stowell*, section 1360 "neither requires an express finding . . . nor contains any sanction for noncompliance" (*Stowell*, *supra*, 31 Cal.4th at p. 1114).  Thus, we apply the general rules that a trial court is presumed to have been aware of, and followed, the applicable law; and that, where "a statement of reasons is not required and the record is silent, [we] presume the trial court had a proper basis for a particular finding or order."  (*Ibid*.)

The record shows that, in support of its in limine motion to introduce evidence of S.B.'s statements to Detective Valdez, the prosecution argued all of the requirements set forth in section 1360 were met.  Specifically, the prosecution argued that S.B. "will be testifying at trial and *the time, content and circumstances surrounding the statements suggest they are . . . reliable.  The statements offered fit the requirements and purpose of Evidence Code section 1360, exactly."  (Italics added.)  The prosecution also argued that, "[g]*iven the indicia of reliability*, corroborating evidence, and notice, [S.B.'s] statements to . . . the Police detective [(Sergeant Valdez)] . . . should be admitted under section 1360."

By ruling that evidence of S.B.'s statements to Detective Valdez were admissible under section 1360, the court implicitly found sufficient indicia of reliability.  We

17

presume the court had a proper basis for this ruling. (See *Stowell*, *supra*, 31 Cal.4th at p. 1114). As Sanchez has failed to meet his burden on appeal of rebutting this presumption, we conclude the court did not abuse its discretion in admitting the evidence of S.B.'s statements under section 1360.

## II. *DENIAL OF PROBATION*

Sanchez also contends the court abused its discretion in denying probation because "it relied on factors that had no support in the record." We reject this contention.

### A. *Background*

During the sentencing hearing, the court stated it had reviewed the probation officer's report and risk assessment, the behavioral science report, Sanchez's statement in mitigation, and the prosecution's statement in aggravation. The court permitted Susana D. to make a victim impact statement. She indicated that since the assault S.B. had trouble sleeping, she was "not the same person in school," and she was seeing a psychologist.

After hearing arguments by both counsel, the trial court denied probation and stated its reasons on the record. With respect to the nature of Sanchez's crime, the court found the sexual offense was "serious" because it involved "two separate instances" and, in one of them, Sanchez "put his penis in the victim's mouth causing her substantial emotional injury that continues to this day."

The court indicated Sanchez did not dispute he was in the country illegally, it was likely he would be deported following imposition of the sentence in this matter, and there was "no practical ability for probation to monitor him." The court found Sanchez was "a

18

danger to others, children in particular." The court noted that Sanchez "was very adept at using different identities to subvert the immigration laws," and "[h]e could use those same skills to subvert probation." In addition, the court stated that Sanchez "shows absolutely no remorse for his conduct."

The court sentenced Sanchez to the middle term of six years in prison, citing two aggravating circumstances. First, the court found that "the victim in this case was particularly vulnerable due to the fact that not only was she a minor entrusted in his care in the home[,] but she was asleep" when Sanchez committed the crime by "sneaking into the bedroom when she was not even fully conscious." Second, the court found that "the manner in which [the crime] was carried out indicated some planning." The court noted that "the evidence at trial was that [Sanchez] was grooming the victim; in other words, showing the victim, attempting to show the victim pornography on the computer" in order to "see and ga[u]ge the victim's reaction" and "then telling [her] not to say things."

B. *Applicable Legal Principles*

"The grant or denial of probation is within the trial court's discretion and the defendant bears a heavy burden when attempting to show an abuse of that discretion." (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.) In reviewing a trial court's decision to grant or deny probation, "it is not our function to substitute our judgment for that of the trial court. Our function is to determine whether the trial court's order granting [or denying] probation is arbitrary or capricious or exceeds the bounds of reason considering all the facts and circumstances." (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 825.)

19

"[I]n determining whether a trial court abused its discretion by denying probation, we consider, in part, whether there is sufficient, or substantial, evidence to support the court's finding that a particular factor was applicable." (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1313.)

C. *Analysis*

As noted, Sanchez claims the court abused its discretion by denying his request for probation because "it relied on factors that had no support in the record." In asserting this claim, Sanchez misrepresents the record by stating that "[t]he probation report emphasized only one circumstance in aggravation, i.e., taking advantage of a position of trust."[5] In fact, in addition to the one cited by Sanchez, the probation report listed *seven* other circumstances that supported the denial of probation: (1) "The circumstances of the crime are serious as compared to other instances of the same crime" (citing rule 4.414(a)(1)); (2) "[t]he victim was vulnerable" because she was "eight . . . years old, [Sanchez's] step-daughter[,] and asleep" (citing rule 4.414(a)(3); (3) Sanchez "inflicted . . . emotional injury" (citing rule 4.414(a)(4); (4) "[Sanchez's] crime is serious in that the loss to the victim was substantial" in an amount to be determined later (citing rule 4.414(5); (5) Sanchez "shows no remorse for his actions" (citing rule 4.414(b)(7); (6) "[i]f not imprisoned, it is likely [Sanchez] will be a danger to others (citing rule

---

[5]     This circumstance is one of the criteria listed in rule 4.414 of the California Rules of Court (all further rule references are to these rules) that a trial court may consider in making the discretionary decision to grant or deny probation. (See rule 4.414(a)(9).)

4.414(b)(8); and (7) Sanchez "is illegally in the United States and poses a flight risk if released on probation."[6]

Sanchez asserts that "the most glaring abuse error by the trial court . . . was its finding that this crime was especially egregious because 'the defendant put his penis *in the mouth*' of the victim" (Sanchez's emphasis). Sanchez complains that "[t]he record here is clear and uncontradicted that [he] did *not* place his penis *in the victim's mouth*, but only rubbed it near her mouth."

Sanchez's complaint on this point is unavailing. In denying probation, the court found that Sanchez's acts of sexual molestation were serious and did state that "in one of the two instances [he] put his penis *in the victim's mouth* causing her substantial emotional injury that continues to this day." (Italics added) By stating that Sanchez put his penis "in" the victim's mouth, the court mischaracterized the evidence at trial. S.B. initially testified that when she awoke in the early morning hours of December 7, she found Sanchez's "thing where he does pee" was "*in* [*her*] *lips* and [her] hair." (Italics added.) S.B. then repeated that his "thing" was "[*i*]*n* [*her*] *lips*." (Italics added.) S.B. then corrected her testimony and stated he was "rubbing it *on* [*her*] *lips*" (italics added) and on her head.

However, although the court mischaracterized S.B.'s testimony regarding the exact nature of Sanchez's act of sexual molestation, Sanchez does not explain why the fact he

---

6    See rule 4.408(a), which provides: "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."

sexually molested S.B. by rubbing his penis *on* her mouth, rather than putting his penis *in* her mouth while she was sleeping should be considered a circumstance in support of a grant of probation or why the court's mischaracterization of S.B.'s testimony constitutes an abuse of discretion that in any way supports his claim that the denial of probation should be reversed. Sanchez does not claim there is no evidence to support the court's finding that his criminal acts caused S.B., a child then eight years of age, "substantial emotional injury that continues to this day," a circumstance listed in rule 4.414(a)(4) as a criterion that supports the court's decision to deny probation. (See AOB 26-27)!

Sanchez also complains that the court's statement that Sanchez "shows absolutely no remorse" for his conduct "seems to impugn [his] rights to plead not guilty, have a jury trial, and protect his post-trial right not to self-incriminate." This complaint is unavailing. As the Attorney General correctly points out, rule 4.414(b)(7) provides that whether the defendant is remorseful is a factor that a sentencing court properly may consider in determining whether the defendant should be granted or denied probation. Sanchez's suggestion that rule 4.414(b)(7) is unconstitutional is not supported by the case authority he cites. Specifically, he cites *People v. Coleman* (1969) 71 Cal.2d 1159, 1168, *People v. Miranda* (1987) 44 Cal.3d 57, 112, and *People v. Bell* (1989) 49 Cal.3d 502, 548, for the proposition that "[t]he California Supreme Court ha[s] repeatedly found that a defendant's failure to confess may not be used as a factor against him at sentencing." Sanchez's reliance on these cases is unavailing.

In *Coleman*, a death penalty case, the Supreme Court addressed the defendant's contention that the prosecutor committed misconduct during the penalty phase of the jury

22

trial by arguing the defendant's refusal to admit his guilt demonstrated his lack of remorse. (*Coleman*, *supra*, 71 Cal.2d at p. 1168.) Similarly, in *Miranda*—another death penalty case—the Supreme Court addressed the defendant's contention that the prosecutor committed misconduct during the penalty phase of the jury trial by stating, "I searched this case for factors in mitigation and I found none. I searched for elements of remorse and I found none." (*Miranda*, *supra*, 44 Cal.3d at p. 111.) In *Bell*, yet another capital case, the Supreme Court addressed the defendant's claim that the prosecutor committed misconduct during the penalty phase of the jury trial by stating, "I might add that nowhere during the course of this case has there been one scintilla of evidence of remorse for the events in question, neither in the guilt phase or penalty phase." (*Bell*, *supra*, 49 Cal.3d at pp. 548, 547.) As is obvious, *Coleman*, *Miranda*, and *Bell* are all inapposite as they all involved claims of prosecutorial misconduct during the penalty phase of the jury trials in those capital cases. Nothing in any of those decisions suggests that a sentencing court in a noncapital case such as this one, in making the postconviction discretionary decision of whether to grant or deny probation, commits constitutional error by considering—as one of numerous factors—"[w]hether the defendant is remorseful" (rule 4.414(b)(7)).

Based on our review of the record, we conclude the trial court did not abuse its discretion by denying Sanchez probation. As noted, the court reviewed and considered the probation officer's report and risk assessment, the behavioral science report, Sanchez's statement in mitigation, and the prosecution's statement in aggravation. The court heard and considered Susana D.'s statements about the effects Sanchez's acts of sexual

23

molestation had on her daughter. The court considered various rule 4.414 criteria in support of granting and denying probation, weighed those criteria in exercising its discretion, and concluded the criteria supporting a denial of probation outweighed those supporting a grant of probation. We cannot conclude the court's decision was arbitrary or capricious, and we reject Sanchez's principal claim that the factors on which the court relied "had no support in the record." The court acted well within the limits of its broad legal discretion. On appeal, "it is not our function to substitute our judgment for that of the trial court " (*People v. Superior Court* (*Du*), *supra*, 5 Cal.App.4th at p. 825), but that, in effect, is what Sanchez suggests we do. For all of the above reasons, we affirm the court's decision to deny probation.

## DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

24