[Crim. No. 1881.    Fourth Dist.    Oct. 28, 1963.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  JAMES RUAL CORDRAY, Defendant and Appellant.

Earl B. Gilliam for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (R. M.), J.*—Appellant was convicted of the charge of committing lewd and lascivious acts upon the body of a 4-year-old girl, after a jury trial on July 24, 1962. The proceedings were thereupon suspended and appellant was found by the court to be a sexual psychopath and was thereafter sent to Atascadero State Hospital for observation and diagnosis. On November 16, 1962, after observation, the appellant was remanded to the superior court on the basis that he was not a sexual psychopath. A motion for a new trial was heard and denied, and appellant was subsequently committed to the state prison for the term prescribed by law. Appellant thereafter filed a timely notice of appeal.

Briefly, the facts show that Sherri Lynn Greene and her 4-year-old sister, Janet, went to a neighborhood store to get some candy. Appellant accosted the children and went with them towards their home, Sherri running ahead. Janet testified that she and appellant stopped near the beach on their way home and sat on some planks where appellant said he wanted to pull her underpants down, and did; that they then proceeded toward the house and upon reaching the house she and the appellant went inside and sat on a couch, where she kicked the appellant and he pulled her underpants down, kissing her on the leg high on the thigh on the inside, putting his finger in her private parts; that she immediately told Sherri and her mother about it. Sherri testified that she saw the appellant pull Janet's underpants down and went across the street to tell her mother that a man was in the house. The mother testified that the girls went to the store to get some candy, that she was across the street from her home at a neighbor's house, that Sherri came to said house crying that there was a man in the house, whereupon the mother went to the front porch and saw appellant and Janet coming out of the house, at which time the appellant asked the mother if he could take Janet to the beach and turned away

*Assigned by Chairman of Judicial Council.

and started walking. Then Janet told her that the appellant had pulled her underpants down and kissed her between the legs, whereupon the mother called the police department.

A police officer and an investigator, on receiving the information of a child molest as well as a description of an elderly man having been seen by the police officer in this area, contacted the appellant. Appellant denied that he had hurt anybody or that he had been with a small child and thereupon was taken towards the house of the child. As they approached the house he said, "Now I know what it is all about." The appellant related to the officers that he had been to the store and had met the two small girls, that he and the smaller girl (Janet) had stopped at the lumber pile, that he sat her on his lap and he kissed her and she kissed him, that he wanted to take her to the beach and they wanted to get the mother's permission so they went to the victim's home and went into the house. The officers testified that the appellant was wearing dirty and soiled clothing, a mustache, needed a shave, and had the odor of alcohol on his breath but was not intoxicated. At the police station, to the question of whether or not he had fondled any little girl, the appellant dropped his head and said, "I don't recall."

The appellant, in his defense, testified that he had met the two little girls, that they all walked a short distance at which time the older girl left them; he continued to where the appellant and Janet stopped at the lumber pile, that Janet sat down on his lap but that he "didn't recall" what they talked about or whether he kissed her at any time, and "she reaches over and kisses me, or pecks me on the end of the nose. I remember that. Whether or not I kiss her on the cheek or not I am not sure. I am not trying to evade, I don't recall." Upon arriving at the house Janet had difficulty with the doorknob and appellant turned the doorknob. He didn't go in, but stood there and twice said, "Anybody home?" There being no answer, he went through the house, sat down on the couch with Janet and stated that he thought maybe the mother was just outside and wanted to compliment her on having two nice little daughters. He testified that Janet was on the couch and laid over on her back and started kicking him, during which time her panties began to "work off"; that he reached down and pulled them further down; that he blew a sound on her abdomen, "very low down," did not kiss her on her sexual organ and did not put his finger in her private parts; that he "blew on it" and thought she

would pull her panties back up again; that the older girl then got up and went through the door. Meanwhile, Janet was standing on the couch and her panties had "slipped off" and he "pulled them far enough to help it, I guess," and then it dawned on him "the first time, 'Holy smoke, here I am a strange man in a strange house, and what if this girl's mother should walk in now?'" He "jerked them up real quick" and said that he had to go and "I kissed her on both cheeks" and left the house. Appellant claims that in playing with the victim he did not intend to appeal to his or the victim's sexual desires.

Appellant admitted convictions on four prior felonies of forgery.

Appellant's contentions are that the evidence was insufficient; that the court erred in permitting the mother to testify over objections to the facts other than that the victim made a bare complaint; and that the court erred in not granting a new trial in the light of the diagnosis that the appellant is not a sexual psychopath. The contention of appellant is that the record fails to disclose sufficient evidence to warrant his conviction and that such evidence as was presented merely casts a suspicion on him.

█ The general rule that the appellate court determines only whether there is substantial evidence in the record, whether direct or indirect, contradicted or uncontradicted, which justifies the conclusion reached as to the sufficiency of the evidence is set forth in *People* v. *Moore,* 196 Cal.App.2d 91, 96 [16 Cal.Rptr. 294].

█ "...the requisite intent may be found from surrounding circumstances." (*People* v. *Andrus,* 159 Cal.App. 2d 673, 681 [324 P.2d 617].)

█ "Intent is manifested by the circumstances connected with the offense. (Pen. Code, § 21.) It should be conceded that the acts performed in this case are of a lustful nature. The intent to arouse the passions ... may be based upon the conduct, manner of performance, etc. of the act." (*People* v. *Owen,* 68 Cal.App.2d 617, 619 [157 P.2d 432].)

█ " 'It is not necessary to show that the sexual desires of the child, or of both child and defendant, were actually affected, since the gist of the crime is the intent and not its accomplishment. Whether the passions were actually aroused is immaterial, except as evidence of the intent with which the acts were committed.' [Citation.] █ The child's testi-

mony needs no corroboration." (*People* v. *Piccionelli*, 175 Cal.App.2d 391, 394 [346 P.2d 542].)

▮▮ There appears to be substantial evidence in the record of this case to justify the conclusion that the appellant was guilty of committing lewd and lascivious acts upon the body of a child.

▮▮ With respect to the victim's complaint, the following testimony was given by her mother:

"Q. [by Mr. Meloche, Counsel for People] Did she [Janet] tell you anything as to what the defendant had done to her?

"A. Yes, she did. I—

"MR. GILLIAM: [Counsel for defense] I will object to anything further.

"THE COURT: No, under a recent decision, Mr. Gilliam, the Supreme Court through Peters stated that although the rule had previously been you could only say a complaint had been made, now the person to whom the complaint was made may relate what the complaint was, so I will overrule the objection. Just tell us briefly in a very few words what your daughter Janet said in the nature of a complaint. Don't give us a long history, just what did she say, very briefly?

"A. She said he had pulled her pants down and he had kissed her between the legs and—

"THE COURT: That's enough."

▮ The appellant's citations of *People* v. *Huston*, 21 Cal.2d 690 [134 P.2d 758], and *People* v. *Branch*, 77 Cal. App. 384 [246 P. 811 ], as to the proposition that the facts recited by the alleged victim are inadmissible hearsay, have been expressly overruled in *People* v. *Burton*, 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433], as follows:

"We therefore accept the view that although details cannot be recounted, it can be shown by the People 'that the complaint related to the matter being inquired into, and not a complaint wholly foreign to the subject' (*People* v. *Swist* (1902), *supra*, 136 Cal. 520, 524 [69 P. 223]) ; that is, the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper." (Italics omitted.)

▮▮ The mother's statement recounting the facts of the complaint, without any further description, falls within the *Burton* rule and her statement could not inflame the jury nor was it prejudicial to the appellant's rights. Such testimony had also been introduced by other witnesses, including Janet.

▮▮ *People* v. *Burton, supra,* further states at page 351:

"[T]he theory of admissibility of evidence of a complaint which is consistent with her testimony and which is not a spontaneous declaration which might be excepted from the hearsay objection is this: It is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur."

The appellant claims that the trial court erred in not granting a new trial on the proposition that the diagnosis by the Atascadero State Hospital that the appellant was not a sexual psychopath was "newly discovered evidence" and that if such evidence was introduced at a new trial the jury would reach a different verdict. His reliance is based on *People* v. *Jones,* 42 Cal.2d 219 [266 P.2d 38].

In the *Jones* case, *supra,* the defendant, charged with violation of section 288 of the Penal Code, offered the testimony of a psychiatrist to the effect that certain examinations resulted in the conclusion that the defendant was not a sexual deviate and was incapable of having the necessary intent to be lustive, either to satisfy himself or the lusts of a small child. The trial court excluded the testimony. On appeal the Supreme Court held that such evidence is analogous to evidence of good character and thus is admissible. The court said at pages 223-224 and 225:

"In the determination of probabilities of guilt, evidence of character is relevant. [Citations.] 'The purpose of the evidence as to the character of the accused is to show his disposition, and to base thereon a probable presumption that he would not be likely to commit, and, therefore, did not commit, the crime with which he is charged.' [Citation.] Proof of the good character of the defendant may be considered as a fact tending to rebut the truth of testimony of an incriminatory character which is sufficient to establish the truth of the charge against him. [Citations.] Character is proved by evidence of the accused's general reputation in the community for the traits which are in issue."

"From evidence which tends to prove that a person is not a sexual psychopath, an inference reasonably may be drawn that he did not commit the act denounced by section 288."

There, the court stated that the intent was clearly established by the circumstances connected with the event; that where the evidence tends to prove that a person is not a sexual

psychopath, an inference may reasonably be drawn that he did not commit the act denounced by section 288; and that such evidence was relevant to the general issue before the jury and should have been admitted.

While the event was denied in *People* v. *Jones, supra,* in the case before us the appellant committed the alleged acts as shown by the evidence of the child as well as his own testimony. He admitted befriending a strange little girl, admitted that he took her on his lap at the lumber yard, kissed her, was not a friend of the family but was a stranger, went into her home in her mother's absence, played with her on the couch, took off her pants and admits blowing or kissing her on her abdomen. (See *People* v. *Matthews,* 150 Cal.App.2d 30, 32-33 [309 P.2d 66].)

While in the *Jones* case, to some extent the girl's testimony was impeached and there was evidence that her reputation for truth and veracity was bad, and while the court held in that case that it appears the exclusion of the psychiatrist's testimony was prejudicial error under article VI, section 4½, of the Constitution, we do not feel in the present case that the denial of a new trial on this basis was prejudicial; the court did not abuse its discretion in so denying the motion; nor would such newly discovered evidence, if introduced, cause a different result to be reached.

It is significant that the evidence on which the appellant relies as newly discovered is no more than the opinion of psychiatrists as to the appellant's lack of sexual psychopathy, which opinion could have been obtained prior to trial, and the request was properly denied under the rules applying to alleged newly discovered evidence.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.