Filed 5/23/16  P. v. Lopez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066988 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD249194) |
| RAMON LOPEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Ramon Lopez of two counts of committing a lewd act upon a child as to J.F. by touching her thigh (Pen. Code, § 288 subd. (a); counts 3 & 4)[1] and four counts of committing a lewd act upon a child as to M.F. by touching her thigh, kissing the back of her neck, and touching her chest (§ 288, subd. (a); counts 7-10).[2] The jury also found true allegations Lopez committed lewd acts against more than one victim. (§§ 667.61, subds. (b), (c), & (e), 1203.066, subd. (a)(7); counts 3, 4, 7-10.) The court sentenced Lopez to a total term of 30 years to life in state prison based on two consecutive terms of 15 years to life for counts 3 and 7 and concurrent terms of 15 years to life for counts 4 and 8 through 10.[3]

On appeal, Lopez contends (1) there was insufficient evidence to support his convictions for counts 3 and 4 regarding J.F. and (2) CALCRIM No. 1110 as given was argumentative and requires reversal. We disagree with both contentions and affirm the judgment.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     We refer to the witnesses who were the alleged victims in this case by their initials to protect their identity.

[3]     During deliberations, the jury requested clarification of whether or not Lopez could be convicted of counts 1 and 2, which charged him with committing lewd acts upon a child by touching J.F.'s breast, if they found Lopez touched her chest as opposed to her breast. Ultimately, the jury could not reach a verdict regarding counts 1 and 2. The court declared a mistrial and granted the People's motion to dismiss these counts. The jury acquitted Lopez of counts 5 and 6, which charged him with committing lewd acts upon a child regarding another victim, A.H., by touching her vagina.

# BACKGROUND[4]

## A

### *Prosecution Case*

#### 1

When J.F. was 10 years old and in fifth grade, her stepfather, Lopez, began to touch the top of her thighs over her clothes. He would do this when J.F. was home alone with him while she was either in her bed or working on her laptop. Lopez touched J.F. every weekend when he was drinking from the time she was 10 years old, in 2010, until April 2013 when J.F. and her mother no longer lived with him. This occurred at least 10 times and made her feel uncomfortable. Sometimes he would sit on the bed next to her and rub her thighs. She stated it was not a pat on the leg like a brother or grandfather would do, but more like grabbing. Lopez would rub her thigh back and forth for a few minutes each time. He would do this when he was drunk. When he was not drinking, Lopez was nice and was like a father to her. J.F. did not like it when he would drink because he would touch her.

J.F. did not tell her mother because she was worried her mother would get sick or mad. Her mother has diabetes and blood pressure problems. She gets sick if she is mad, worried or if something bad happens.

J.F. saw Lopez touch her sister, M.F., when they were going to the beach. Lopez grabbed M.F.'s thighs and held her hand. This occurred after Lopez started touching J.F.

---

[4] We summarize the evidence related to the counts for which Lopez was convicted.

M.F. told J.F. to be careful because Lopez would touch M.F. and it made her uncomfortable. J.F. did not tell M.F. Lopez had touched her because she did not want anyone to find out.

In May 2013, J.F. told a friend at school Lopez was touching her and making her uncomfortable. The friend told other girls and the school counselor, which made J.F. angry. J.F. was sent to the counselor, who called the police. J.F. told the police she felt uncomfortable when Lopez touched her thighs. A social worker from Child Welfare Services also came to the school and J.F. told her what happened. When J.F.'s mother arrived, the social worker told her mother Lopez had been touching J.F.'s thighs and chest. J.F. was scared her mother would not believe her. J.F.'s mother became sad and they moved out of the house. The news affected J.F.'s mother's health.

2

Lopez was like a father to M.F. when he first married her mother. When M.F. was eight years old and in third grade, Lopez started touching her in a way that made her uncomfortable. The first time was a holiday party in 2004. She was dancing with her mother and Lopez, who were drinking. When her mother took a break to go to the restroom, Lopez asked M.F. to dance. While they danced, he started tickling her. He then put his hand under her shirt and squeezed her breast. M.F. backed away and went to the restroom, but she did not tell her mother because her mother was drunk. The next day Lopez said, "You don't remember nothing, right, from yesterday?" M.F. took this as a threat and acted as though nothing happened.

Thereafter, Lopez touched M.F. every weekend when he drank from the time she was eight years old until she was 16 years old, at which time she had a boyfriend and moved out of the house. Lopez touched, squeezed, and rubbed her inner and outer thigh. He would touch her when no one else was at home. He touched her while they were sitting on the couch or driving in the car on the way to her school bus stop. If she told him to stop, he would get mad. He touched her breasts more than once, but less than he touched her thighs. When she would wash the dishes, he would come up behind her, put his arm over her shoulder, reach under her shirt, and touch the top part of her breast or chest. He would also kiss her neck or back. He touched her breast or chest and thighs multiple times when she was under the age of 14.

When Lopez would drive her to the school bus stop, he would tell her he loved her and he was going to kidnap her and take her to Mexico when she turned 15 years old. He said he wanted to marry her and give her roses. M.F. did not tell her mother because Lopez threatened her by saying it would be her fault if her mother got sick. He also said if she "snitch[ed] on him" she knew where his gun was.

During M.F.'s testimony, Lopez spoke out in Spanish to M.F. and held up an iPhone with a picture. The court admonished Lopez not to disrupt the proceedings or intimidate the witnesses. Lopez later testified he held up a picture of M.F.'s mother and asked M.F. if she did not love her mother. He stated he was sad and was reminding M.F. about her mother and her mother's health.

The mother of J.F. and M.F. denied anyone told her Lopez had been touching M.F. She said she learned in 2013 from a social worker at J.F.'s school.

5

## B

### *Defense Case*

J.F. told the police officer who interviewed her at school that she was approximately 10 years old when Lopez began touching her. She stated he placed his hands on her thighs over her clothing and moved his hands up and down across her leg touching the inner part of the thigh on the top. She stated he also patted or rubbed her chest area. She stated Lopez kissed her on the neck a few days before, which made her uncomfortable. She said Lopez did not touch her when he was not drinking. She said she was not afraid of Lopez, but wanted him to stop touching her.

Lopez's nieces testified they attended family functions with Lopez and saw him drink alcohol and interact with other family members. They described him as respectful, nice, helpful, and fun to be around. He never touched them or made them feel uncomfortable. They never saw him touch J.F. or M.F. inappropriately. He treated them as if they were his daughters.

Lopez testified on his own behalf. He stated he thought of M.F. and J.F. as his own daughters. His relationship with M.F. was good at the beginning, but her behavior changed around age 10 or 11. She would not listen and was rebellious. She did not want to go to school. He would drive her to the bus stop or to school. He denied telling her he was going to take her to Mexico or make her his bride. He denied touching her thigh inappropriately. He denied telling her he loved her in a romantic way or touching her in a sexual way. He denied touching her breast or inner thigh or kissing her. He loved both girls as his own family members.

Lopez stated he had a good relationship with J.F. and was closer to her than he was to M.F. He referred to J.F. as his "little princess." He stated he put cream on her chest when she had trouble with asthma. He would hug and kiss her on the cheek or the forehead, but denied touching J.F. in a sexual way.

DISCUSSION

I

*Sufficiency of the Evidence as to Counts 3 and 4*

Lopez contends J.F.'s testimony was too generic and insufficient to support his convictions for counts 3 and 4. We disagree.

When we review a challenge to the sufficiency of the evidence, " ' we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.]

7

A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) The same standard applies to cases involving circumstantial evidence. If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

"[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ." (§ 288, subd. (a).) A child need not specify the precise date, time, place or circumstance to support a charge for lewd conduct under this section. "[T]he particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (*People v. Jones* (1990) 51 Cal.3d 294, 315.) A victim's statements provide sufficient evidence to support a conviction under section 288, subdivision (a), if the statements, "describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to

8

describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones,* at p. 316.)

In this case, J.F. testified Lopez started touching her in a way that made her uncomfortable when she was 10 years old. He touched and rubbed her upper thighs over her clothes at least 10 times. She said this occurred when she was alone in her room every weekend over a three-year period from 2010 until 2013 when she no longer lived with him. The touching was not a pat on the leg, instead Lopez rubbed his hand back and forth on her thigh for a few minutes each time. He would do this only when he was drunk. This testimony describes the kind of acts with sufficient specificity to establish the acts occurred and amounted to lewd conduct. (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*) ["a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body"].) It describes the number of acts with sufficient specificity to support counts 3 and 4 for the first and last incidents. It also describes the general time period to establish J.F. was under 14 years old and the acts occurred within the applicable limitations period. This testimony alone is sufficient evidence to support Lopez's convictions for counts 3 and 4. (*People v. Crow* (1994) 28 Cal.App.4th 440, 446-447.)

9

In addition, the jury heard evidence of both charged and uncharged lewd acts Lopez committed against J.F.'s sister, M.F.  The jury was entitled to consider and infer Lopez's lewd intent from similar conduct he engaged in with M.F.  (Evid. Code, §§ 1101, subd. (b), 1108; *People v. Cole* (2004) 33 Cal.4th 1158, 1194 [prior conduct similar to the charged offense may " 'support the inference that defendant probably harbored the same intent in each instance' "]; *Martinez*, *supra*, 11 Cal.4th at p. 445 ["other acts of lewd conduct admitted or charged in the case" are relevant to determine intent].)  The jury was able to consider the difference in Lopez's relationship with the two girls and the fact he was more explicit in stating his intentions to M.F.  However, the jury could infer his intentions as to J.F. based on the similarity of conduct.  We conclude substantial evidence supports the convictions under counts 3 and 4.

## II

### *Jury Instruction*

Lopez contends the use of CALCRIM No. 1110, which defines the offense of committing a lewd or lascivious act on a child under the age of 14, violated his constitutional rights to due process and a fair trial because the instruction as given was

impermissibly argumentative and duplicative.[5]  Specifically, Lopez takes issue with the statement, "Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator of the child is not required."  He contends this statement emphasized facts the prosecution was not required to prove.  We are not persuaded.

" ' "The trial court functions . . . as the jury's guide to the law.  This role requires that the court fully instruct the jury on the law applicable to each particular case." ' " (*People v. Watie* (2002) 100 Cal.App.4th 866, 876.)  In criminal cases, the trial court must sua sponte instruct on the general principles of law governing the case which are necessary for the jury's understanding of the case, including all the elements of the charged offense.  (*Ibid.*; *People v. Cummings* (1993) 4 Cal.4th 1233, 1311.)  The language of a statute defining a crime is generally a sufficient basis for an instruction. (*People v. Smithey* (1999) 20 Cal.4th 936, 980-981.)  If the legal meaning of a statutory term differs from its meaning in " 'common parlance,' " the trial court should provide clarifying instructions.  (*Id*. at p. 981.)  However, the trial court should not give an

---

5      The jury was instructed with CALCRIM No. 1110 as follows:  "The defendant is charged in Counts 1 through 10 with committing a lewd or lascivious act on a child under the age of 14 years of age in violation of Penal Code section 288[, subdivision (a)].  [¶] To prove that the defendant is guilty of this crime, the People must prove that:  [¶]  1. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;  [¶]  2. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;  [¶] and  [¶]  3. The child was under the age of 14 years at the time of the act.  [¶]  Someone commits an act *willfully* when he or she does it willingly or on purpose.  It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.  [¶] Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required.  [¶]  It is not a defense that the child may have consented to the act.  [¶]  Under the law, a person becomes one year older as soon as the first minute of his or her birthday has begun."

11

argumentative instruction, which " 'invite[s] the jury to draw inferences favorable to [a party] from specified items of evidence on a disputed question of fact, and therefore properly belongs . . . in the arguments of counsel to the jury.' " (*People v. Flores* (2007) 157 Cal.App.4th 216, 220.)

Section 288, subdivision (a), defines the lewd act offense as committed when a person (1) "willfully and lewdly commits any lewd or lascivious act" upon the body of a child under age 14, and (2) "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." CALCRIM No. 1110 sets forth the touching and the intent elements and then clarifies various elements of the offense, including the intent element. Given its ordinary meaning, the sexual intent element could be construed to require actual sexual arousal. However, it is well established actual sexual arousal is not an element of the offense. (*People v. Cordray* (1963) 221 Cal.App.2d 589, 593 [" ' "It is not necessary to show that . . . sexual desires . . . were actually affected, since the gist of the crime is the intent and not its accomplishment." ' "]; *People v. McCurdy* (1923) 60 Cal.App. 499, 502 [whether the acts have the effect of arousing passions or sexual desires is immaterial].)

The language Lopez complains about from the pattern jury instruction is a correct statement of the law and provides appropriate clarifying information to assist the jury. The instruction given to the jury in this case did not focus on specific items of evidence in an argumentative fashion nor did it duplicate the elements to be proven. Therefore, we conclude the trial court did not err in instructing the jury with CALCRIM No. 1110.

12

Additionally, even if there were error, there is no indication the jury applied the instruction in an impermissible manner or was confused or distracted about the People's burden.  To the contrary, the record shows the jury carefully considered the evidence and the law.  The jury acquitted Lopez on counts 5 and 6 as to alleged victim A.H. and could not reach a verdict as to counts 1 and 2 regarding whether or not Lopez touched J.F.'s breast or chest.  Accordingly, we conclude any error was harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jennings* (2010) 50 Cal.4th 616, 676-677.)

## DISPOSITION

The judgement is affirmed.


McCONNELL, P. J.

WE CONCUR:


McINTYRE, J.


O'ROURKE, J.


13