Filed 5/24/16  P. v. West CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C079419 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F08106) |
| v. | |
| WILLIE CLYDE WEST, | |
| Defendant and Appellant. | |

A jury found defendant Willie Clyde West guilty of rape (Pen. Code, § 261, subd. (a)(2)),[1] assault with a deadly weapon (§ 245, subd. (a)(1)), forcible oral copulation (§ 288a, subd. (c)(2)), forcible penetration with a foreign object (§ 289, subd. (a)(1)), corporal injury on a cohabitant (§ 273.5, subd. (a)), and false imprisonment (§ 236).  In a bifurcated proceeding, the trial court found true the special allegation that defendant had served a prior prison term.  (§ 667.5, subd. (b).)  The trial court sentenced defendant to an

---

[1] Undesignated statutory references are to the Penal Code.

aggregate term of 25 years in state prison. The trial court also imposed various fines, fees, and assessments.

On appeal, defendant contends as follows: (1) trial counsel rendered ineffective assistance of counsel by failing to object to hearsay testimony; (2) the trial court erred by allowing testimony that exceeded the scope of the "fresh complaint" doctrine; (3) the trial court erred by failing to stay the sentence imposed for the assault with a deadly weapon conviction under section 654; and (4) the trial court improperly imposed a booking fee and a jail classification fee. We disagree and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2014, defendant and the victim, D.S., were living together in Sacramento. The victim described the relationship as "friends with benefits."

In December 2014, the victim, a friend (Rene M.), and defendant attempted to engage in a "threesome" but were unsuccessful because defendant could not get an erection. After dropping Rene off at her home, defendant became angry and emotional. During the drive home, he yelled at the victim and struck her in the face with the back of his hand, causing her nose to bleed. When they arrived home, defendant continued to yell at the victim. Defendant also hit the victim in the head with his fist, whipped her with a belt, and struck her with a shoe and a metal pole. During the attack, defendant repeatedly told the victim, "How dare you."

After beating the victim for about an hour, defendant ordered the victim to remove her clothes. She removed her pants and defendant put baby oil on her vagina. Defendant then grabbed a screwdriver and inserted the handle into the victim's vagina. Defendant also inserted the handle of a hairbrush into her vagina. The victim cried and repeatedly begged defendant to stop. Defendant, however, did not stop; instead, he inserted his penis into the victim's vagina for about five minutes. He then resumed beating the

2

victim. He also put the hairbrush, the screwdriver, and a remote control inside her mouth. Eventually, defendant left the bedroom and went into the living room. When he returned, he was carrying what appeared to be a metal pole that he used to beat her legs and shins, as she raised them in an attempt to block the blows. He then left the bedroom and returned again, this time with a knife. He straddled the victim and pointed the knife at her chest. He then demanded oral sex from the victim. In fear, the victim complied.[2]

Around 7:00 p.m., defendant went to work. Before leaving, he told the victim not to leave the apartment and threatened to "fuck [her] up" if she did. After defendant left, the victim met Rene M. at a nearby store. She told Rene that defendant had hit her and stuck things in her vagina. Rene took the victim to a friend's house to photograph her injuries. The victim then went back to her apartment and fell asleep.

Defendant returned from work after 3:00 a.m. He woke the victim up and again said, "How dare you." He told her that she would be sleeping on the floor from now on, and then kicked and choked her. He also spit in her face. When defendant fell asleep, the victim went to Rene M.'s house and called the police.

The county sheriff's deputy who responded to Rene M.'s house observed bruises on the victim's legs, back, face, and head. The deputy also observed that the victim was visibly shaken and crying. Angela Rosas, M.D., of Sacramento's sexual assault response team conducted a sexual assault examination on the victim. She observed abrasions and/or bruises on the victim's shins, thighs, legs, arms, back, buttocks, head, jaw, and forehead. She also observed scratches and abrasions on the victim's neck consistent with strangulation. Dr. Rosas, however, did not find any signs of trauma to the victim's vagina or anus.

---

[2] Although she was not entirely certain, the victim said that she also performed oral sex on defendant prior to the "knife incident."

Defendant was arrested and interviewed by a sheriff's detective at the county jail. During his interview, defendant acknowledged that he was embarrassed about the failed threesome, and admitted that he had slapped the victim after dropping Rene M. off at her house. He also admitted that he "whooped" the victim for about 10 minutes with a belt when they got home. He claimed that he had consensual sex with the victim and then went to sleep. Defendant stated that he woke up later and was still furious about the threesome. He said that he told the victim to "get on her fucking knees and suck [his] dick," and then went to sleep after she did so. Defendant admitted that he woke up a couple of hours later, around 3:00 a.m., and "whooped" the victim with two belts, slapped her, and "put the screwdriver in her." He also admitted to hitting the victim with a shoe and a "plastic" "stick thing," like a window "blind[s]" lever. Defendant, however, denied hitting her with a metal pole (as alleged in count four), or that he threatened the victim or used force during sex. He stated that the victim never said "no."

In April 2015, a second amended information was filed charging defendant with 10 counts: rape (§ 261, subd. (a)(2)—count one); assault with a deadly weapon, a knife (§ 245, subd. (a)(l)—count two); assault with a deadly weapon, a belt (§ 245, subd. (a)(1)—count three); assault with a deadly weapon, a metal pole (§ 245, subd. (a)(l)—count four); two counts of forcible oral copulation (§ 288a, subd. (c)(2)—counts five & six); two counts of forcible penetration with a foreign object (§ 289, subd. (a)(1)—counts seven & eight); corporal injury on a cohabitant (§ 273.5, subd. (a)—count nine); and false imprisonment (§ 236—count ten). It was also alleged that defendant had served a prior prison term (§ 667.5, subd. (b)) for inflicting corporal injury on a spouse (§ 273.5).

Following a jury trial, defendant was found guilty of the charges in counts one, three, five, seven, nine and ten. He was found not guilty of the charges in counts two, four, and six. Count eight was dismissed after the jury was unable to reach a verdict. In

4

a bifurcated proceeding, the trial court found true the special allegation that defendant had served a prior prison term.

The trial court sentenced defendant to an aggregate term of 25 years in state prison. The trial court also imposed various fines, fees, and assessments, including a $382.22 booking fee (Gov. Code, § 29550.2) and a $61.75 classification fee (*ibid.*).

Defendant filed a timely notice of appeal.

## DISCUSSION

### 1.0    Ineffective Assistance of Counsel

At trial, Dr. Rosas testified as an expert in forensic examinations. She concluded that the victim's injuries were consistent with a sexual assault. In reaching this conclusion, Dr. Rosas relied on the victim's statements and her examination of the victim. During her testimony, Dr. Rosas described the details the victim had provided her about how the sexual assault occurred. On appeal, defendant contends that trial counsel rendered ineffective assistance of counsel because he failed to object to Dr. Rosas's testimony and her expert report on hearsay grounds. According to defendant, there is no hearsay exception that would allow the admission of Dr. Rosas's testimony or the statements in her report discussing the victim's description of his actions.[3] We disagree.

To establish a claim of ineffective assistance of counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to defendant. (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*); see *Strickland*

---

[3] Defendant asserts that Dr. Rosas's testimony and her expert report contain the same inadmissible hearsay.

5

*v. Washington* (1984) 466 U.S. 668, 687-688 [80 L.Ed.2d 674].)  "Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*People v. Williams* (1997) 16 Cal.4th 153, 215.)  If defendant makes an insufficient showing on either one of these components, his ineffective assistance claim fails.  (*People v. Holt* (1997) 15 Cal.4th 619, 703; see *Strickland*, *supra*, at p. 687 [80 L.Ed.2d at p. 693].)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance.  On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.  All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Mai*, *supra*, 57 Cal.4th at p. 1009.)  As a general matter, because the failure to object to evidence usually involves a tactical decision on counsel's part, it rarely establishes a counsel's incompetence.  (*People v. Frierson* (1979) 25 Cal.3d 142, 158; see *People v. Boyette* (2002) 29 Cal.4th 381, 433.)

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).)  Hearsay evidence is inadmissible unless there exists an exception to the rule that permits its admission.  (*Id*., subd. (b).)

"California law permits a person with 'special knowledge, skill, experience, training, or education' in a particular field to qualify as an expert witness (Evid. Code, § 720) and to give testimony in the form of an opinion (*id*., § 801)." (*People v. Gardeley* (1996) 14 Cal.4th 605, 617.)  Expert testimony may be "premised on material that is not admitted into evidence so long as it is material of a type that is reasonably relied upon by

6

experts in the particular field in forming their opinions. (Evid. Code, § 801, subd. (b); [citations].) . . . [¶] So long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. [Citations.] And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion." (*Gardeley*, at p. 618; see *People v. Cooper* (2007) 148 Cal.App.4th 731, 746 ["It is the long-standing rule in California that experts may rely upon and testify to the sources on which they base their opinions [citations], including hearsay of a type reasonably relied upon by professionals in the field."].)

Here, because the statements made by the victim to Dr. Rosas regarding defendant's conduct were not offered for their truth but only for the limited purpose of explaining the basis of Dr. Rosas's opinions, the statements were not inadmissible hearsay. (See *Cooper*, *supra*, 148 Cal.App.4th at p. 747 ["Hearsay relied upon by experts in formulating their opinions is not testimonial because it is not offered for the truth of the facts stated but merely as the basis for the expert's opinion."].) Thus, we cannot fault counsel for not making what would have been a futile objection. Moreover, defendant failed to establish prejudice. In light of the jury instructions[4] and the evidence presented at trial, including defendant's admissions during his jail interview and the photographs taken of the victim's body, it is not reasonably probable that absent the alleged error by

---

[4] In accordance with CALCRIM No. 332, the jury was instructed that in evaluating expert testimony, it must decide whether the information on which Dr. Rosas relied was "true and accurate," and that it may disregard any opinion it finds "unbelievable, unreasonable, or unsupported by the evidence."

trial counsel, a result more favorable to defendant would have been reached. Accordingly, defendant's claim of ineffective assistance of counsel fails.

## 2.0    Fresh Complaint Doctrine

Defendant contends the trial court erred by allowing testimony in violation of the fresh complaint doctrine. According to defendant, Rene M.'s testimony about the victim's description of the sexual assault exceeded the scope of the doctrine. We disagree.

Under the fresh complaint doctrine, a trial court may admit evidence of an extrajudicial complaint made by a victim of a sexual offense for a nonhearsay purpose. (*People v. Brown* (1994) 8 Cal.4th 746, 749-750 (*Brown*).)  In *Brown*, our Supreme Court explained that "proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose—namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others—whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." (*Ibid*.)

Evidence of a fresh complaint may be relevant because "the circumstances under which the complaint was made may aid the jury in determining whether the alleged offense occurred. Furthermore, admission of evidence that such a prompt complaint was made also will eliminate the risk that the jury, if not apprised of that fact, erroneously will infer that no such prompt complaint was made." (*Brown*, *supra*, 8 Cal.4th at p. 761.) However, the fresh complaint evidence should be "carefully limited to the fact that a complaint was made, and to the circumstances surrounding the making of the complaint, thereby eliminating or at least minimizing the risk that the jury will rely upon the evidence for an impermissible hearsay purpose" (*id*. at p. 762)—that is, "as tending to prove the truth of the underlying [sexual offense] charge . . . " (*id*. at p. 763).  The fact of

the making of the complaint includes "evidence demonstrating that the complaint ' "*related to the matter being inquired into, and* [*was*] *not a complaint wholly foreign to the subject . . . .*" ' " (*Id.* at p. 756.)

We conclude that Rene M.'s testimony did not exceed the scope of the fresh complaint doctrine. The details in Rene's testimony about the sexual assault—i.e., the victim told her that defendant "was hitting on her," had hit her with a shoe, and stuck some objects in her vagina, including a remote control, a brush, and a screwdriver—are similar in nature to details that have been held acceptable in other cases. (See, e.g., *People v. Butler* (1967) 249 Cal.App.2d 799, 804 [victim stated that "the man was sucking his thing"]; *People v. Cordray* (1963) 221 Cal.App.2d 589, 594 [victim stated "he had pulled her pants down and he had kissed her between the legs"].) Therefore, the trial court did not err in allowing the testimony. The admission of Rene M.'s statements about the sexual assault was not an abuse of discretion. (*People v. Alvarez* (1996) 14 Cal.4th 155, 203 [abuse of discretion standard applicable].)

But even assuming the trial court erred in allowing this testimony, the error was harmless. In view of the evidence presented at trial, it is not reasonably probable that defendant would have realized a more favorable result if the details in Rene M.'s testimony about the sexual assault had been excluded. (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1526 [applying reasonable probability standard to erroneous admission of spontaneous statement hearsay evidence for hearsay purposes].) Indeed, except for Rene M.'s testimony about defendant putting a remote control and brush in the victim's vagina, defendant admitted to the other details of her testimony regarding the sexual assault. Furthermore, defendant was convicted on only one count of forcible penetration with a foreign object, and he admitted to putting a screwdriver "in" the victim.

Finally, we reject defendant's cumulative error argument. Defendant claims that the admission of Dr. Rosas's and Rene M.'s testimony regarding the sexual assault resulted in cumulative error because their testimony bolstered the victim's credibility, thereby making the victim's description of the assault considerably easier to believe. "In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself. '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*In re Reno* (2012) 55 Cal.4th 428, 483.) However, when, as here, claims have been previously rejected on their substantive merits—i.e., no legal error found—the claims cannot logically be used to support a cumulative error claim because there was no error to cumulate. (See *ibid.*) Moreover, even assuming the trial court erred as defendant contends, we conclude that such errors, when viewed in combination, could not possibly have affected the jury's verdict. (*People v. Martinez* (2003) 31 Cal.4th 673, 704.)

## 3.0    Section 654

Defendant contends that his conviction for corporal injury on a cohabitant and his conviction for assault with a deadly weapon, a belt, were based on the same objective and course of conduct. He therefore argues that the trial court erred by failing to stay his sentence on the assault conviction. We disagree.

Under section 654, subdivision (a), "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." " 'The proscription against double punishment in section 654 is applicable where there is a course of conduct which . . . comprises an indivisible transaction punishable under more than one statute . . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and

10

if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' [Citation.] 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162; see *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

"[A] finding that multiple offenses were aimed at one intent and objective does not necessarily mean that they constituted 'one indivisible course of conduct' for purposes of section 654. If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) "As our Supreme Court has explained in referring to section 654, 'a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment.' [Citation.] 'This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken.' [Citation.] This rule has been applied in numerous instances when several crimes could broadly be described as part of an overarching criminal plan, but were committed on different days." (*People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1289.)

We conclude the evidence does not show that section 654 applies to defendant's conviction for assault with a deadly weapon, a belt. The record reflects that defendant struck the victim in the face with his hand on the drive home from Rene M.'s house. The record also reflects that, after arriving home, defendant hit the victim with his hand and other objects, including a belt. There was also evidence that defendant kicked, choked, and spit on the victim after he had left the residence for about eight hours. During his jail interview, defendant admitted to slapping the victim and "whooping" her with a belt on

11

two separate occasions. Accordingly, because the evidence showed that defendant had ample opportunity to reflect and renew his intent between the acts of violence against the victim, this renewal justified the imposition of separate punishment for corporal injury on a cohabitant and assault with a deadly weapon, a belt. (See *People v. Felix* (2001) 92 Cal.App.4th 905, 915 ["[M]ultiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense carried a new risk of harm"]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368 [two assaults on same victim one minute apart may be punished separately].)

**4.0     Booking Fee and Jail Classification Fee**

Defendant contends the trial court erred by imposing a booking fee and a jail classification fee. However, because defendant failed to object to these fees below, he has forfeited this issue on appeal. (*People v. McCullough* (2013) 56 Cal.4th 589, 597-599.)

**DISPOSITION**

The judgment is affirmed.


                                                            BUTZ            , J.


We concur:



    RAYE            , P. J.



    MAURO          , J.


12