Filed 4/2/24  In re Le.P. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Le.P. et al., Persons Coming Under the Juvenile Court Law. | B325418 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.P.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP02028A, 22CCJP02028B |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Michele Kemmerling, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Father appeals visitation restrictions in a juvenile court exit order premised on the court's finding that he sexually abused his 13-year-old daughter Le.P. We conclude the evidence was sufficient to support the finding and related visitation restrictions. We affirm.

## FACTS AND PROCEDURAL HISTORY

Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, drawing all reasonable inferences to uphold the court's order. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Father and mother met in high school.[1] Mother gave birth to Le.P. in 2009 and to Le.P.'s sister La.P. in 2010. The parents are separated. The children live with mother, their stepfather, and a five-year-old half sibling (mother's and stepfather's child).

Mother reported father was "very controlling." In 2012, he became violent. She also said father was part of a "spiritual cult," and he had wanted to move the family to Mexico to follow his religious beliefs. Mother refused to uproot the children, and father left for Mexico alone. While he was away, mother obtained a restraining order that restricted father's contact with the girls to monitored visits. After father returned to the United States in 2014, he completed a domestic violence course, and was granted unmonitored overnight visits with the children every other Friday to Sunday.

In March 2022, the Los Angeles County Department of Children and Family Services (Department) received a referral about alleged child sexual abuse. According to the referral, Le.P. had disclosed that father touched her thigh, back, and vagina

---

[1]     Mother is not a party to this appeal.

2

underneath her pants and forced her to use psychedelics and other controlled substances. La.P. had also disclosed that father touched her back and thigh and gave her drugs, including honey with psychedelic mushrooms.

Mother said she was unaware of the abuse before Le.P. disclosed it. She noted the girls had acted "differently" after visits with father—they became "distant" and did not want hugs or to be close to anyone at home. La.P. had asked to stop visiting with father around 2020. She would not explain why and said only that she "didn't like it." Le.P. stopped visiting father in December 2021. She later reported father "did not spend time with her," he was " 'mean,' " he spoke negatively about mother, and he was "always high."

In an initial interview with a dependency investigator, La.P. denied that she had been touched in her private areas, but she did recall an incident when she was five years old "where there was touching" by father. She could not remember anything specific about the incident, other than that she did not tell her mother or stepfather because she was "scared." Regarding the drug allegations, La.P. said father had given her a spoonful of honey when she was 10 that caused her to "feel weird like she was 'out of [her] mind.' "

Le.P. said father started touching her in a "weird and inappropriate manner" when she was 11 or 12 years old. She said father's girlfriend had left him and he began touching her " 'in a way he would touch his girlfriend.' " He usually began by touching her upper back and moved down to her waist in a "soft touch." When she helped father cook, he routinely put his hands on her back and moved them to her waist area in a way that made her feel uncomfortable. During an incident at the

park, father put his hand underneath her shirt and touched her chest. He also kept her dirty underwear around his house and sometimes came into the restroom when she was showering. She denied that father ever touched her vagina or that he ever showed her his private parts. Regarding the drug allegations, Le.P. reported that father gave her mushrooms and cactus that made her "feel weird."

In May 2022, the children underwent forensic examinations. La.P.'s medical findings were "normal"; however, she disclosed that father had given her an unknown drug against her will that made her feel dizzy and strange. Le.P.'s medical findings also were normal, but she also disclosed that father had given her drugs and touched her inappropriately on multiple occasions. She said father touched her back, her thigh, her waist, and her breast under her shirt. The examiner recommended both girls undergo a forensic interview to assess the abuse.

Father denied all allegations. He said he gave the children non-psychedelic "mushrooms," "other supplement[s]," and "vitamins" in accordance with his "holistic" approach to living. He denied the reports of inappropriate touching and questioned whether the children were "making it up or being told by the mother to say those things."

The Department filed a petition to declare the girls dependent children under section 300, subdivisions (b), (d), and (j) of the Welfare and Institutions Code. The petition alleged father sexually abused Le.P. and gave her psychedelic mushrooms, which placed both girls at risk of physical and emotional harm.[2]

---

[2] Regarding the sexual abuse allegations specifically, the petition alleged father had fondled Le.P.'s breasts, back, thighs,

In September 2022, Le.P. sat for a forensic interview. She reported father first gave her psychedelic mushrooms when she was seven or eight years old. He kept the mushrooms in a jar mixed with honey and always gave it to her "in that form." When she was 12, father took Le.P. to a party in the desert with "a lot of drug people." He gave her mushrooms mixed with honey and left her to watch the bonfire. Le.P. described feeling "really weird" and then terrified, like someone was "watching" her. She later found herself lying in a van, screaming, like she was "in a dream that was happening in real life" and she couldn't "get out" of it "for seven hours straight." She was very sensitive to light and saw shapes and colors. There was a dog in the van, and she remembered its face "stretching" and "moving." It was "horrifying." When she told father how she felt he "kind of smirked like he knew [she] was going to feel that way." Later he tried to coach her on how to calm down. Le.P. said she didn't remember "anyone doing anything" to her, but she also couldn't explain why she was "freaking out so much" and "screaming." Father had made her take the honey at other gatherings in the desert, but this was the "worst."

Every time Le.P. sat in the front seat of a car with father, he would touch her and rub circles on her thigh while he was driving. She described how he would "go up here," indicating that father would move his hand from her thigh to up around her hip or lap while rubbing her. She said the touching made her "uncomfortable" when she was young and even more so as she got older.

and waist, causing Le.P. to feel sexually threatened, and on other occasions he entered the bathroom while she showered.

5

When Le.P. helped with cooking or washing dishes, father often came up behind her, hugged her from behind, touched or massaged her back, or held her waist. On one occasion while Le.P. was chopping vegetables, father gave her a back hug and "started getting very low" with his hands. She recalled feeling "frozen there" and "confused." As father's hands moved down to her waist, two neighbor friends saw them through a window and called out to Le.P. Father immediately "let go" of her waist and moved away. Le.P. saw that he seemed to get "embarrassed" or "scared because someone was there watching." She left to play with the neighbors and noticed they gave her "weird faces." She was 11 years old.

Le.P. said the "worst" touching incident occurred at the park when she was younger. She and her sister were climbing a tree and, as she was making her way down, Le.P. injured her chest. When she reacted to the injury, father asked to see it, then put his hand up her shirt and started rubbing her chest area under the shirt, "almost" on her breast, in what Le.P. described as an "inappropriate area." A woman in the park saw what happened, confronted father, and told him to stop touching Le.P. that way. Father became angry and "ran off quickly" with the girls.

Le.P. felt "uncomfortable" wearing a bra around father. She described how he would "always" feel for her bra strap "to see if there was anything there" when he touched or massaged her back. One time after touching her bra strap, father commented that Le.P. would always be his "little girl" and he didn't want her to grow up. She also routinely found her underwear lying around father's house, and a few times she found it on the floor in a "dirty and weird" condition. Father didn't wash her underwear

like he washed her other clothes, and he became angry when she asked to take her clothes back to mother's house.

The juvenile court held the adjudication hearing in September 2022. Father challenged his daughters' credibility, noting inconsistencies in their allegations from interview to interview. With respect to the drug counts, father maintained the mushrooms were merely "supplements," and he emphasized that mother hadn't noticed any change in the children that would suggest they'd been exposed to mind altering substances. As for the sexual abuse counts, father argued his conduct could be construed only as "normal caretaker" activities or "demonstrations of affection" and there was no evidence that he was motivated by a desire for sexual gratification.

The children's counsel asked the court to sustain all counts, arguing the girls' statements had been substantially consistent and supported the petition's allegations. Minors' counsel challenged the contention that father had simply acted as a normal caretaker. She argued the number and persistence of the incidents involving intimate touching suggested "grooming" and "boundary pushing" to "normalize inappropriate behavior." Because father knew or should have known the appropriate physical boundaries to have with a preteen or teenage daughter, minors' counsel maintained it was reasonable to infer that father's conduct revealed an aberrant motivation that put both girls at risk. The Department joined with the recommendation, echoing the concern that father's "repeated" touching was "sexualized" and reflected "grooming behavior."

The juvenile court sustained the petition, finding father sexually abused Le.P. and gave her psychedelic mushrooms, which put both girls at risk of serious physical and emotional

harm. Focusing on Le.P.'s forensic interview, the court observed: "[A]lthough [Le.P.] said he didn't quite touch the breast[,] . . . [she] did make clear that he touched her in her thighs and clothing covering them[.] [T]he court believes that this was for sexual arousal or gratification, and I do not believe that it could be construed as normal caretaker activities or for the benefit of the child or for a valid medical reason that the father had to massage the breast area or touch the minor's inner thigh. I do agree with [the minors' and Department's counsel] that father's conduct was tantamount to grooming the child for further contact." As for the drug allegations, the court rejected father's claims that he had given Le.P. only non-psychedelic supplements, citing the girl's report that the mushrooms caused her "to hallucinate or to see colors."

After declaring the children dependents and releasing them to mother's custody, the juvenile court terminated jurisdiction and entered an exit order denying father visitation with the girls. The exit order specifies that therapeutic visits may begin, in consultation with father's and the minors' therapists, if father participates and makes substantial progress in a sexual abuse treatment program for perpetrators and individual counseling.

## DISCUSSION

Welfare and Institutions Code section 300, subdivision (d) establishes juvenile court jurisdiction over any child who " 'has been sexually abused, or [if] there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent.' " (*I.J., supra,* 56 Cal.4th at p. 772.) Penal Code section 11165.1, in turn, defines "sexual abuse" to include, among other things, any act that violates Penal Code section 288 (lewd or lascivious acts upon a child under the

8

age of 14).[3]  (See *In re R.C.* (2011) 196 Cal.App.4th 741, 749 (*R.C.*).)

Section 288 "prohibits *all* forms of sexually motivated contact with an underage child.  Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act."[4]  (*People v. Martinez* (1995) 11 Cal.4th 434, 444 (*Martinez*); *R.C., supra,* 196 Cal.App.4th at p. 749.)  "Thus, any touching of a child under the age of 14 is [an offense under the statute] 'even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' "  (*R.C.,* at p. 749, quoting *People v. Lopez* (1998) 19 Cal.4th 282, 289; accord, *Martinez,* at p. 444 [" 'If [the] intent of the act, *although it may have the outward appearance of innocence*, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute.' "].)  Guilt "under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim.  [Citations.]  Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body."  (*Martinez,* at p. 444; accord *People v. Panah* (2005) 35 Cal.4th 395, 488 [§ 288 " 'is violated by "any

---

[3]  Subsequent statutory references are to the Penal Code.

[4]  In relevant part, section 288, subdivision (a) provides that "a person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony."

touching" of an underage child committed with the intent to sexually arouse either the defendant or the child' "]; see, e.g., *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1380 [testimony of child that defendant "rubbed her stomach, back and thigh" sufficient to sustain conviction under § 288 in view of defendant's "pattern of conduct with [child] as well as with other young girls"].)

Father challenges the juvenile court's sexual abuse finding and, with it, the related condition of the exit order denying visitation unless he participates in sexual abuse classes and counseling. With respect to the finding and exit order, father argues there was "insufficient evidence" that his "touching of [Le.P.] was anything other than parental affection and care that was misinterpreted due to the strained relationship" with his daughter, as well as mother's "influence and her desire that [the girls] no longer visit" with him. Because, in father's telling, "there was not a scintilla of evidence suggesting the touching was done with an intent to induce sexual arousal," he contends the juvenile court's sexual abuse finding was "unsupported by substantial evidence and must be reversed." We disagree.

In reviewing a challenge to the sufficiency of the evidence supporting a juvenile court's factual findings, " 'we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." ' " (*I.J., supra,* 56 Cal.4th at p. 773.) " 'The appellant has the burden of showing there is no evidence of a sufficiently substantial nature

10

to support the findings or order.' " (*In re D.C.* (2015) 243 Cal.App.4th 41, 52.)

Where the physical touching of a child "might be consistent with a nonsexual purpose," the trier of fact "can look to surrounding circumstances and rely on them to draw inferences about [the perpetrator's] intent" under section 288. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1160; accord *In re Mariah T.* (2008) 159 Cal.App.4th 428, 440 ["Because intent for purposes of Penal Code section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances."].) "It is common knowledge that children are routinely cuddled, disrobed, stroked, examined, and groomed as part of a normal and healthy upbringing," but "any of these intimate acts may also be undertaken for the purpose of sexual arousal." (*Martinez, supra,* 11 Cal.4th at p. 450.) Thus, "the circumstances of the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent [citation], and such intent must be inferred from all the circumstances . . . . A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute. On the other hand, if the trier of fact is persuaded beyond a reasonable doubt, from all the circumstances, that the touching of a child *was* sexually motivated, nothing in the language, history, or purpose of section 288 indicates that the touching should escape punishment simply because it might not be considered a means of sexual gratification

by members of the mainstream population."[5]  (*Id.* at p. 452; *R.C.,* at p. 750.)

Father principally contends the evidence was insufficient to prove he touched Le.P. with the intent to arouse or gratify a sexual desire because there are plausible innocent explanations for his conduct.[6]  When father put his hand up Le.P.'s shirt

[5]     As the juvenile court correctly observed in rebuffing father's reliance on law enforcement's decision not to pursue charges, the criminal beyond-a-reasonable-doubt standard does not apply to a dependency proceeding, and the Department needed prove only by a preponderance of the evidence that sexual abuse occurred to support the juvenile court's finding. (See *I.J., supra,* 56 Cal.4th at p. 773; Welf. & Inst. Code, § 355, subd. (a).)  This standard of proof is consistent with the legislatively declared purpose of our dependency law " 'to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused . . . and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm.*' "  (*I.J.,* at p. 773.)

[6]     Father also contends the juvenile court improperly relied on La.P.'s claim that father touched her genitals—an allegation that was not pled in the dependency petition.  (Cf. *In re G.B.* (2018) 28 Cal.App.5th 475, 489 [juvenile court violated the father's due process right when it "crafted, asserted, and then adjudicated allegations against him based on a factual and legal theory not raised in the original dependency petition"].)  The record doesn't support the claim of error.  Contrary to father's contention, it's clear from the context of the court's statements that the court based its jurisdictional finding solely on Le.P.'s reports about father touching her inappropriately (e.g., that he "didn't quite touch the breast[ ]") and that the court's invocation of "[t]he intentional touching of the genitals"

and rubbed her chest near her breast after she injured herself in the park, father says he was "merely trying to soothe her hurt." When father rubbed Le.P.'s thigh and moved his hand up toward her lap or hip whenever she sat in the front seat of the car, father says he was only "affectionately touch[ing] the top of his daughter's thigh, and there was no evidence [he] was motivated by unnatural sexual urges." When father would embrace Le.P. from behind when she was helping in the kitchen, rub her back, and move his hands down to her hips, father says he was simply showing her "signs of affection" and there was nothing in the circumstances of his "affectionate touching of [Le.P.'s] back and waist" to suggest a sexual intent. And, when father would routinely feel for and hold Le.P.'s bra strap in his fingers after rubbing her shoulders, father says he was only exhibiting "a normal parental reaction to lament that one's child is getting older and growing closer to adulthood."

To satisfy his burden as appellant it is not enough for father to show that an innocent state of mind is a possible or even plausible inference to draw from the circumstances. Rather,

---

was only a reference to the statutory language of section 11165.1. (See § 11165.1, subd. (b)(4) [" 'sexual assault' " includes "[t]he intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of a child"].) In making its sexual abuse finding, the court did not refer to La.P. or to her allegation that father had touched her vagina. Moreover, because *any touching* of a child that is sexually motivated is sufficient to sustain a sexual abuse allegation under section 288, the court's reference to genitals was superfluous and inconsequential. As for the court's observation that La.P. had confirmed father also gave her "shrooms," father has not challenged any finding or order premised on his drug related conduct.

13

father must demonstrate the circumstances precluded any rational inference that he touched Le.P. with an illicit intent. As we have discussed, "[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction" under the Penal Code. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) "[T]he standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence. 'We "must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence. [Citation.]" . . . Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87; accord *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court"].)

The juvenile court found father touched Le.P. "for sexual arousal or gratification," rejecting his contention that he was engaged in only "normal caretaker" activities or "demonstrations of affection." In making the finding, the court specifically referenced the incident in the park, observing there was no "medical reason" that father needed to put his hand up his preteen daughter's shirt to "massage the breast area" for the type of injury she described. The circumstantial evidence reasonably justified this inference, including Le.P.'s discomfort with the touching, the reaction of a member of the public who confronted father about the touching, and, critically, father's reaction to

14

the confrontation. As Le.P. described, when father was confronted, he immediately became angry and "ran off quickly" with the girls. While this reaction could be reasonably reconciled with an innocent state of mind, the juvenile court could also reasonably infer that it reflected father's consciousness of guilt and sexual motivation for the touching. (See, e.g., *In re Mariah T.*, *supra*, 159 Cal.App.4th at pp. 432, 440–441 [circumstantial evidence supported inference of sexual intent where mother's live-in boyfriend touched clothed minor when she slept and signaled her to remain quiet when she woke, "from which an inference of guilty intent could be drawn"].)

Indeed, this wasn't the only occasion when father's reaction to third-party intervention suggested a potentially guilty conscience and veiled sexual intent. Le.P. described one of apparently several incidents when father embraced her from behind and moved his hands down her back to her hips while she worked in the kitchen, and how father immediately "let go" of her waist and moved away in a manner suggesting he was "scared because someone was there watching" after some neighbor friends saw them through a window and called out to Le.P. Father's seeming manifestations of guilt, together with other recurring circumstances—his persistent touching of Le.P.'s thigh near her lap when they rode in a car together; massaging her, hugging her from behind, and holding her by the hips in a way that Le.P. described as the " 'way he would touch his girlfriend' "; and his apparent fixation on her intimate apparel (her bra strap and underwear on the floor)—supported a reasonable inference that father's touching of Le.P. was a means of sexual gratification. (See, e.g., *People v. Gilbert, supra,* 5 Cal.App.4th at pp. 1379–1380 [rejecting defendant's argument

that rubbing young girl's clothed back, hip, and stomach was insufficient to support conviction under § 288, recognizing evidence of defendant's "pattern of conduct" supported inference of sexual intent].)

Apart from his proffered innocent explanations, father argues a sexual motive could not be inferred because there was no evidence that he "talked to [Le.P.] about sexual activities, rubbed his body against her as he hugged her, [or] became erect." Under section 288, it is not necessary to show the perpetrator's " ' "sexual desires . . . were actually affected, since the gist of the crime is the intent and not its accomplishment. Whether the passions were actually aroused is immaterial, except as evidence of the intent with which the acts were committed." [Citation.] The child's testimony needs no corroboration.' " (*People v. Cordray* (1963) 221 Cal.App.2d 589, 593–594.) Father also points to his "complicated relationship" with Le.P. and suggests she may have been "influenced by [mother] who wished visitation to end" in an apparent effort to raise an inference that Le.P.'s reports were fabricated. As we have said, "assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court." (*In re Alexis E., supra,* 171 Cal.App.4th at p. 451.) "Evidence from a single witness, even a party, can be sufficient to support the [juvenile] court's findings." (*Ibid.*)

The evidence supported the juvenile court's finding that Le.P. had suffered and was at risk of suffering sexual abuse as defined by sections 11165.1 and 288. The court reasonably concluded father's evident sexual motivation placed both Le.P. and La.P. at risk, and this risk justified the court's exit order conditioning visitation on father's participation in a sexual abuse

16

treatment program and counseling.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902 [dependency exit orders reviewed for abuse of discretion]; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300–301 [an abuse of discretion occurs when the court " ' " 'mak[es] an arbitrary, capricious, or patently absurd determination' " ' "].)

## DISPOSITION

The juvenile court's exit order is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EGERTON, J.

We concur:



EDMON, P. J.



LAVIN, J.